May it please the Court, I'm Maximillian Sprinkle and I represent Paul Voss, the appellant, This case is primarily about the summary judgment standard itself and whether there is any burden that a move-in for summary judgment must meet, whether or not a move-in can completely ignore the allegations in a complaint and argue what they want to argue in a motion for summary judgment, and whether handling summary judgments in such a way violates due process and deprives a plaintiff of his rights under the Seventh Amendment to a trial. In this case, as in many cases, the defendant often meets no burden in their summary judgment motion. They simply present facts and they don't show that those facts establish that they're entitled to summary judgment, as in this case. In this case, the facts that Mr. Voss presents and the facts that the defendants, that the appellees present, are essentially the same. Mr. Voss presents that he was suspended and without pay initially, eventually with pay because of a perceived disability, because he was taking prescription medication and his employer thought that that made him disabled. In addition to the underlying disabilities... What exactly was the evidence that the employer thought he was disabled? The evidence is direct evidence that the employer initially sent an email saying that because you're taking oxycodone, you need to show me that you can perform your work duties, that you can drive a truck, that you can do things like that, things that he had been doing for 14 years, that they concede he does well. It's part of their argument to argue that he was not disabled. Wouldn't that be more of a concern, though, about the side effects of taking oxycodone? It could be. It could be both. It could be that the underlying disability causes issues, but also the side effects of taking oxycodone itself could be a perceived disability. Not that they did disable Mr. Voss, but the defendants did perceive that it caused a disability in him. Why does taking oxycodone necessarily mean that he's disabled? It does not necessarily mean he's disabled. However, the position taken by the defense is that because he took oxycodone, he needed to prove to them that he was not disabled. They required that he prove to them that he could perform his work duties that he had been performing for 14 years and that they admit that there was no reason for them to believe he couldn't perform. Part of their argument that he was not disabled was that he had no reason and his employer, Mr. Wise, had no reason to believe he was disabled. And they used that to say, well, he was not disabled. Well, in that case, why did Mr. Wise then require him to prove that he could perform duties, that he was not at risk, that essentially he was not disabled, that he was not limited by the taking of the oxycodone? And not only did they require it, but they actually suspended him from his job because of it. First off, requiring it and requiring a list of all his medications is itself a violation of the Americans with Disabilities Act, unless it's tied specifically to a job function, in which case they admit that it's not. They admit that he did his job just fine for the past 14 years, and they had no reason to believe he couldn't. So that in itself is a violation of the Americans with Disabilities Act. Therefore, they cannot establish that they are entitled to summary judgment by presenting those facts alone. But not only is the mere request- Well, you have to have an adverse action. Yes, well, the mere- I don't know if just asking for a list of medications is an adverse action. Well, the statute suggests that it is in 42 U.S.C. section 12112D4, big A. It suggests that even requesting a medical background from an employee is a violation of the ADA, unless it's tied to a business necessity. However, there was an adverse action. Not only did they ask for it, which itself was a violation, but they suspended him from work until he provided it. And this suspension lasted for over two months. And not only did they suspend him, but initially they suspended him without pay. And they sent several letters, all of which are part of the record, all of which were actually made part of the initial motion for summary judgment, that where, first off, the executive director of the Housing Authority himself demanded that Mr. Voss provide a list of all possible medications that he could take that could give a positive test result for an opioid. And the way he phrased it is that he needs a complete list of prescriptions that contain opioids or that are related in any way, whatever that means. So he's not only inquiring about the specific oxycodone, but he's also saying, is there anything else wrong with you with that question? That question necessarily contemplates that there might be something else wrong with you, and we need to know what it is. After that, there are several follow-up letters from the Council of the Housing Authority and from Mr. Wise, where they specifically say, you cannot return to work until you show us, until you have a doctor tell us that you're not limited in a major life activity. Essentially, they don't word it like that. They say that you're not limited in your job functions because of taking the oxycodone, and that explicitly was the reason for keeping him out of work for two months. Eventually, they let him come back to work, probably on some advice that that was a violation of the ADA, just assuming there, they let him come back to work. But when he came back, they had stripped away his ability to operate equipment, his ability to drive vehicles, which he had done in his position as a maintenance supervisor for years, and they confined him to a desk. They didn't allow him to make purchases that he had been able to make before without prior approval. Essentially, the job he came back to was an entirely different job. And not only that, but when he came back, Mr. Voss does allege that he was told by Mr. Wise that, I may be paraphrasing wrong, but that you, that something, a baseball analogy, that you can't hit them all, but I'll get you next time. Essentially suggesting that, I tried to keep you off work forever. I eventually had to rehire you, but I'll get you next time. And the treatment that he received after he returned was an example of the, I'll get you next time. Therefore, it demonstrates that all of that was a continuous action taken by defendants on admission because of the potential of opioid use. Also, defendants admit that at that time, they knew that Mr. Voss had PTSD from his prior service. What's the evidence that they knew he had PTSD? Well, they admit that they knew he had PTSD as of when he returned in May. The first day that he returned in May, he had a meeting with Mr. Wise, and both sides agreed that at that meeting, at least, that he was told that Mr. Voss had PTSD. Now, their position is that Mr. Voss' constructive termination after that was not because he had PTSD. However, that misses part of the point because even before, the two-month suspension, initially without pay for about a month, was also because of a perceived disability, dealing with oxycodone, dealing with any other prescription medications that Mr. Wise requested of him. And a trier of fact could believe, could infer from that, that he also had some qualms with the underlying disability. He would not be taking oxycodone and multiple medications for nothing. And therefore, there is some evidence that a trier of fact could perceive that, that even at the time that he requested this list of all the medications that he had in his mind, that Mr. Voss had some other underlying disability. But taking the medications is enough. There is some case law to suggest that an employer perceiving that someone is disabled because of medication is perceiving that they have a disability and is a violation of the ADA. And that is clear. That's undisputed in this case, that the reason for his initial suspension was because of some perception that he was limited by the taking of the oxycodone. Let me ask you this. Is it an adverse action if he is suspended initially without pay but then given full pay and a raise when he comes back? Why is that an adverse action? Well, suspension is adverse. For one, it is definitely negative to Mr. Voss to not be able to work. And it's negative for him to miss pay for a month also. It's adverse because during that month he still has to take care of whatever he had to take care of. It's as adverse as it would be if an employer delayed pay for a month at any time. Okay. I understand the point. Do you want to save the rest of your time for rebuttal or do you want to continue on? I want to save it for rebuttal if I can. You may. Yes, sir. Thank you for your argument. Ms. Witherspoon, we'll hear from you. Thank you, Your Honors. Can you hear me now? Yes. That's also adjustable, by the way. The whole podium is. Oh, I'm fine. Thank you. All right. Let me address first some of Mr. Sprinkle's arguments and statements. It's clear from the record, and if you look at appendix page 61, at the very most, he lost where it's not paid for two weeks. There's nothing in the record that says that Mr. Voss even lost any pay because that could have been just one pay period. If you look at the lawyer's letter, it says that he was paid all back pay, so he was only off for two weeks before he was repaid. Secondly, we did. What was your point about how it might not have been any loss of pay because he doesn't get paid? Assuming that you get paid on a regular basis, he was suspended initially on March 13th, effective March 14th. The lawyer's letter that's on appendix page 61 has a lot of stuff in it, but it basically says, and you're not going to be on suspension without pay. You received back pay starting April 1. So you're saying if he were just paid monthly, then there would have been no, but here's a record show when he was paid. The record doesn't show any of that. It just shows that he was suspended, and then it shows that effective April 1, he received his back pay and all of his benefits. So the pay was not for a month. Secondly, the question about not asking for the list is simply incorrect. All the lawyer's letters and Mr. Wise's letters that begin on appendix page 58 show that what they were asking for was, hey, you're taking an opiate. Could you please have your doctor send us something that says, number one, is that what caused the positive drug test, and number two, is that going to impair your ability to perform your jobs safely? Mr. Voss, it's unrebutted. Among other things, drove a housing authority vehicle and operated heavy equipment for his position, so we needed something. And also, the record reflects the drug is hydrocodone and not OxyContin. So I wanted to state that too. In any event, we are here because there's really, really three claims, only three claims left. Most of the claims were easily disposed of by the court, the lower court, on procedural grounds. Mr. Voss filed two charges of discrimination only, and both charges are on ADA issues and not anything else. He does not allege in his two charges, number one, that the change in job duties, that is, not being allowed to operate the truck and machinery, and getting permission before he expends any housing authority funds were violations of any law. That's not in his charges. He does not allege constructive discharge or constructive termination in his charges. He does not allege hostile work environment, and I won't even go into the fact that he didn't allege any Title VII violations. So since these were not mentioned in his charges, they're barred for failure to exhaust administrative remedies with the EEOC. So now that leaves us with two claims that were included in the EEOC charge and his due process claim. First of all, we have the leave slash suspension. Secondly, we have the threat of discharge. And thirdly, we have the due process employment at will. Very quickly on the employment at will issue due process, it's clear under Arkansas law that Mr. Voss was an employee at will, thus had no procedural due process rights at all. Then let me go to the claims that are barred by the fact that he failed to exhaust his remedies. And in this case, Mr. Voss did not raise all those issues in his two charges. Since he didn't file a timely charge, then those claims should be dismissed as not administratively exhausted. Each incident of discrimination and each retaliatory adverse employment decision should be a separate, actionable, unlawful employment practice that he had to address first with the EEOC and did not do that. That's what the EEOC is there for. This court recognized in Sellers v. Deere and Company that the failure to mention a demotion claim in a charge prevents a plaintiff from pursuing that in a subsequent lawsuit. The hostile work environment claim that Mr. Voss raised was also not administratively exhausted and certainly weren't related to his claims of ADA discrimination. Importantly, Mr. Voss never alleged in any claim of discrimination, any charge, that he was constructively discharged. So that, too, should be dismissed for failure to exhaust administrative remedies. He did not allege in his charges any retaliation of Title VII, and that should also be dismissed for not being administratively exhausted. Thus, nothing in his amended charges would have led the EEOC to investigate those claims, whether he was retaliated against in any of those claims. The first charge was filed on May 6 and was received by the EEOC on May 13. There's nothing in the record that shows when it was mailed to the Housing Authority or to Mr. Wise, so we don't know when Mr. Wise received it. But what we do know is that on May 14, in the morning, Mr. Voss returned to work, and they had a conversation about his change in duties. So there can be no retaliation for even filing that first charge of discrimination. And the second charge was filed May 16, 2014, and signed by the EEOC as received on May 19. That's the same day that Mr. Voss resigned his employment. The fact that he checked the continuing violation box does not rescue his failure to exhaust his constructive discharge claim. And he certainly didn't make any allegations in his charge of May 16 about the reason he was going to quit. So we know that the change of job duties occurred at a discrete time between the filing of the two charges. And after he quit was the May 19, 2014 charge. Would you like to address at all the arguments that were made this morning about the claim that was exhausted? Yes, I'm getting to that next. So even though those claims were exhausted, we still need to look at what are these other items that are discrete acts and whether he proved any of these elements of his prima facie case. So first of all, in one of his claims, he alleges that the ADA leave suspension was an adverse employment action. He has to establish, number one, that he has established a prima facie case. He has the burden of doing that. He has to show that he was regarded as disabled, that he was qualified to perform the essential functions of the position, and that he suffered an adverse employment action. Counsel, what about the appellant's argument that he was perceived as disabled when they requested the list of medications and they knew that he was taking them? Your Honor, there's ample case law out there that's cited in our brief that just asking somebody for a list of medications or the fact that somebody's taking medications is not an adverse employment action and does not lead to a perception of disability. In this day and age, when somebody fails a drug screen, it's important that the employer know whether that drug is going to impact their job duties and performance responsibilities. And that's not just a business necessity, but it's important for safety reasons for the public and for the individual himself. The fact that he had that positive drug screen and that we asked for that acknowledgement does not establish that we regarded him as disabled. And we cited, too, Fuller v. Farmland Foods, which rejected the argument that the request that the plaintiff's doctor submits a report following a positive drug test demonstrated that the plaintiff was regarded as disabled. We also cited, and that's a Nebraska case, we also cited a Northern District of Illinois case, which granted summary judgment because the plaintiff had no evidence that his employer regarded him as disabled after the positive drug test. So in Balow v. Odecca, which is a Pennsylvania case, the plaintiff was told by the court he could not rest his entire case, which was a regarded as claim, on the fact that he failed the drug test. And that slide is contained in our brief on page 26. The fact that the prescription opiates themselves created a disability was not argued in the appellant's brief. We know from his own admission to Mr. Wise that he took these opiates for pain management, for sciatica, bad knees, and arthritis, not PTSD. There is no admissible evidence that he had any side effects from the opiates, that the housing authority was aware of any side effects, or that we regarded him as disabled because of the side effects. Did that answer your question, Your Honor? Yes. So what does the record show about when the employer became aware of PTSD? Mr. Voss admitted that he told Mr. Wise that when he returned to work on May 14th. And that was well after the adverse act occurred. Yes, and well after the fact that he was told that he needed to bring the doctor's note explaining the safety issue. In addition to finding that Mr. Voss was not regarded as disabled, the district court had some alternative grounds for granting summary judgment. Even if they regarded him as disabled, he failed to establish the third element of his claim. He could not establish that he suffered an adverse employment action because he was regarded as having a disability as to what actions the housing authority took, which was number one, you can't drive a vehicle, you can't operate our equipment, until we get something from your doctor that says you're not going to be harmed by continuing to take hydrocodone, a strong opiate. And he had to have that, he said he had to take those hydrocodones because of his medical condition. Again, sciatica and other pain in his knees and legs. So, that's why I was off work, because we needed something from the doctor about why he was taking the opiates and what he could safely perform. And we argued that in our brief. And we also cited a second case, Lopez v. Jalisco Owners Corporation. And in that case, the court said that you were not in violation of the ADA if we were just asking for the reason why he was taking the opiates and if that would impair his ability to safely perform the job. Mr. Boss also failed to establish an adverse employment action as part of the third prong of his prima facie case. An adverse employment action is a tangible change in working conditions that produce a material employment disadvantage. He got a raise, his pay didn't change, he could go back to driving as soon as the doctor said that he was safe to do that. There was no adverse, tangible adverse employment action at all taken against him. In Higgins v. Gonzales, this court said there was no discrimination exception to the applicability of the motion for summary judgment and that a recommendation to terminate is not an adverse employment action because there's no resulting material change in the employment situation. So, just as a recommendation to terminate cannot be an adverse employment action, this threat to terminate is not at the level of an adverse employment action. And as far as the discrimination exception to the application of summary judgment, this court in 2011 in the Torgerson case said, this is a judicial instrument that is not disfavored, it's designed to ensure the just, speedy, and inexpensive determination of every case, not just non-employment cases. The leave itself was not considered an adverse employment action since he received his pay, all his benefits, returned to his previous position, and he was certainly not able to establish that there was an adverse employment action. In the Singletary case, this court has previously held that an investigatory suspension with pay is not an adverse employment action. Since Mr. Voss received all of his pay and a raise, it didn't rise to the level of an adverse employment action. Voss also did not show that the housing authorities articulated non-discriminatory and non-retaliatory reasons for its actions were a pretext for discrimination or retaliation. The court didn't reach the issue of pretext below because it found three separate grounds that Voss did not establish a prima facie case. Number one, the court found that he failed to show pretext even if he did establish a prima facie case. Voss has no evidence and provided no evidence to prove a pretext, and as the court said, we have multiple grounds to grant summary judgment. Some of those claims he abandoned, and other claims he did not establish the pretext. And in his brief before this court, he cited nothing in the record that would support that. Thank you. Very well. Thank you for your argument. Mr. Sprinkle, if you can make rebuttal. Okay. Your Honors, first I want to correct the correction of the appellee that the only request was for an explanation of what the medications did to Mr. Voss. In appendix page 58, the first email where Mr. Wise was thanking Mr. Voss for providing that he took hydrocodone, that explained the positive drug screening, he requested that he also, he said, I have no other way of knowing if you were taking any other prescriptions that contain opiates. And so he requested a list of any other prescriptions and the quote that I quoted earlier. And so he did request a list of the drugs, of prescriptions, and he requested that Mr. Voss have a doctor explain that he's essentially not limited. And to distinguish those cases, none of those cases were like this case. All of those cases were about a positive drug screening and the employer trying to find the reason for the positive drug screening. In this case, the employer got the reason for the positive drug screening. It was the hydrocodone. Then the employer took another step that clearly violates the ADA of saying, okay, this hydrocodone, in my opinion, might limit you, which is actually an essential part of their argument, is that hydrocodone might limit Mr. Voss. And so they take another step that's not present in any of the cases that they cite, of saying because the reason for your positive drug screening, which is what the other cases were trying to get at, limits you, in my opinion, you must leave work initially without pay. Isn't it a little more than their opinion, though? I mean, isn't it pretty well known that hydrocodone has a warning that says, you know, use caution operating machinery and driving vehicles? I mean, wouldn't they be taking a big risk to allow him to drive out in the public knowing that he's taking hydrocodone? They wouldn't because they have no reason in the context of this case to believe that. And they admit they have no reason. They admit that he's been there for 14 years and that he'd been taking hydrocodone the entire time. And they admit that there was no indication in his work history, and they had no indication that he couldn't do what he had been doing up until the day that they suspended him. And the only reason was this, him telling them that he took hydrocodone. And that reason does violate the ADA. Inquiring about that, it violates the section of the ADA. And also their express admission that they believe that he is limited violates the ADA. And also, you know, requiring a doctor to say he's not limited, there's not many doctors that would do that. So that would place an unreasonable restraint because a doctor wouldn't want to put himself at risk of saying, yes, this person I know for a fact that he can do anything. So that requirement itself, even if it was legitimate, would violate the ADA because it would place an undue burden. The other one is that as far as arguing that the perception that the hydrocodone created a disability was argued in the initial complaint and it was argued in the brief, it wasn't laid out extremely long because it was argued in the complaint and it was not refuted. And that gets us back to the initial issue of whether or not a motion of summary judgment has to actually demonstrate that the complaint is not true. This one does not. They leave that to stand in the complaint. And therefore, the district court's grant should be reversed. All right. Thank you for your argument. Appreciate all counsel's appearance and the case is submitted.